PEOPLE v. LOVELESS.

(Court of Special Sessions of First Division of City of New York. April, 1903.)

1. THREATENING LETTER—CAUSING ANNOYANCE—MISDEMEANOR—STATUTE—INTENT.

The intent of defendant, prosecuted under Pen. Code, § 559, as amended by Laws 1891, p. 288, c. 120, making it an offense to send a letter with "intent thereby to cause annoyance," is to be gathered from the effect and purpose of the letter, not from his mental operations.

2. SAME.

Defendant, as secretary of the Stationers' Board of Trade, wrote a letter to a publishing company, demanding payment of an account held for collection; stating that, if it was not paid without its being placed in the hands of an attorney, "it will become our duty, under the by-laws of the board, to notify members (per accompanying list)" thereof. The list named a large number of persons doing business in the city where the publishing company was located and elsewhere. Held, that the purpose and effect of the letter were to annoy, inhibited by Pen. Code, § 559, as amended by Laws 1891, p. 288, c. 120, declaring such act an offense.

Wyatt, J., dissenting.

Edwin H. Loveless was prosecuted for a misdemeanor. Guilty.

Argued before HOLBROOK, P. J., and MAYER and WYATT, JJ.

Edward Sandford, Asst. Dist. Atty., for the People.

Rounds & Dillingham (Ralph S. Rounds, of counsel), for defendant.

MAYER, J. On January 28, 1903, the defendant, as secretary of the Stationers' Board of Trade, sent to the Woodward Publishing Company a letter, of which the following is a copy:

"The Stationers' Board of Trade, 97 & 99 Nassau Street. P. O. Box 615.
Rooms 209, 210 & 211.

"Bureau of Collections.

"New York, January 28, 1903.

"The Woodward Publishing Co., New York City—Gentlemen: A claim of Wm. Knoepky P. B. Co. against you for $15 has been sent to this office for collection.

"It is desirable that a settlement of this claim should be made without its being placed in the hands of an attorney, as in that event it will become our

duty, under the by-laws of the board, to notify members (per accompanying list) that such action has been taken.

"The claim will be held here until January 29, 1 p. m., when, if not settled, it will be sent to an attorney, with directions to commence proceedings for collection. Please give the matter your immediate attention, and communicate direct with this office.

"Yours respectfully,          The Stationers' Board of Trade.
                              "E. H. Loveless, Secretary."

"In answering, please use our docket No. E700–80."

The "accompanying list" referred to contained the names and addresses of a large number of persons doing business in the city of New York and elsewhere.

The question is whether the words, "in that event it will become our duty, under the by-laws of the board, to notify members (per accompanying list) that such action has been taken," when considered with the context, come within the prohibitions of section 559 of the Penal Code. This section, prior to 1891, provided that a person "who, knowing the contents thereof, sends * * * any letter * * * threatening to do any unlawful injury to the person or property of another," is guilty of a misdemeanor. By chapter 120, p. 288, of the Laws of 1891, the section was amended by adding "or any person who shall knowingly send * * * any letter * * * with intent thereby to cause annoyance to any person" is guilty of a misdemeanor. Section 559 of the Penal Code, as it existed prior to the above referred to amendment of 1891, was intended to cover a state of facts which did not come within the provisions of sections 254 and 558 of the Penal Code, relating to "Threatening to Publish a Libel" and "Blackmail." But even then the section was not sufficiently comprehensive; and to meet this inadequacy the Legislature enacted chapter 120, p. 288, of the Laws of 1891, and thereby defined as a misdemeanor cases not covered by section 558 or section 559 of the Penal Code as originally enacted. Section 559, as originally enacted, related to a writing threatening to do an unlawful injury to the person or property of another. By "unlawful injury" is meant an injury resulting from an act prohibited by the law of the state, whether common or statutory; and an "unlawful injury" may be redressed by civil remedy or criminal prosecution, as the case may be.

The defendant contends that a notice, if sent by him to the members of the Stationers' Board of Trade, as threatened in the above referred to letter, would not be libelous, because such communication would be privileged (Reynolds v. Plumbers' Protective Ass'n, 30 Misc. Rep. 709, 63 N. Y. Supp. 303, affirmed 169 N. Y. 614, 62 N. E. 1100), and therefore, as such act would not constitute an "unlawful injury," the threat contained in defendant's letter was not a threat to do an "unlawful injury." It is not necessary to determine whether the phraseology found in the letter in question constitutes a threat to do an "unlawful injury," for the clear purpose of the amendment of 1891 was to extend the statute so as to include those cases where the act threatened would not constitute an "unlawful injury," but would cause annoyance, difficulty, and embarrassment, for which no legal redress was provided. In the Reynolds Case, supra, the action was for libel, and the question was whether the communication sent

by the Plumbers' Protective Association was privileged. But the case at bar is not analogous with the Reynolds Case. The purpose here was not to give a notice to the members of the Stationers' Board of Trade for their benefit, but was solely to force the complainant, who was not a member of the Stationers' Board of Trade, into a position where he would be compelled to pay. Such a result was to be obtained by threatening the complainant to notify a large number of persons that the claim had been placed in the hands of an attorney. In other words, there was an attempt to usurp the function of the courts, and to compel the complainant to satisfy a claim in controversy, not upon the merits of the claim, nor because the complainant desired to avoid litigation, but because the threat would induce, or have the tendency to induce, the complainant to pay through fear of impairment of his credit. To that end, the letter was of a character calculated to cause annoyance to the complainant. The threat was to send to a large number of persons a notice which might or would be subject to misconstruction, and which would not fairly state what controversy, if any, existed, what the financial condition of the complainant was, and what reasons, if any, he gave for refusing or neglecting to pay the claim, but which would contain merely the naked statement that the claim had been placed in the hands of an attorney for collection. Such a letter surely would have the effect of causing not a merely capricious disturbance in the mind of the person receiving it, but a substantial fear that he might or would be placed in an unjust and unfair position before a large number of merchants. The intent of the defendant is to be gathered, not from his mental operations, but from the purpose and effect of the letter, and that intent was to harass and annoy the complainant to an extent which would result in the payment of the claim. The defendant may have had the right to inform the members of his association, by a fair notice, of the facts relating to the claim in question; but his threat to the complainant to send to the members of his association a notice that the claim had been placed in the hands of an attorney for collection could have had no purpose or effect other than to annoy the complainant, and thereby seek to compel the payment of this claim. No other conclusion can be drawn from the undisputed facts as disclosed in this case. Almost any merchant would prefer to pay a claim of $15, however unjust, rather than be compelled to explain and counteract a statement sent to a large number of persons that it was necessary to begin suit against him for so small a sum of money. And, as was found by Mr. Magistrate Breen, if the effect of such a letter is not to cause annoyance, we fail to understand what kind of a letter would do so.

The letter clearly comes within the prohibition of the statute, and the defendant is guilty of the misdemeanor charged.

HOLBROOK, P. J., concurs. WYATT, J., dissents.